**FILED**

SEP - 8 2008

Clerk, U.S. District and
Bankruptcy Courts

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY AND :
ETHICS IN WASHINGTON,
1400 Eye Street, N.W., Suite 450,         :
Washington, D.C. 20005
                                          :

                                          :

STANLEY I. KUTLER,                        :
4112 Keewatin Trail
Verona, WI 53593                          :

                                          :

MARTIN J. SHERWIN,                        :
2204 Decatur Place, N.W.
Washington, D.C. 20008-4009               :

                                          :

AMERICAN HISTORICAL                          Case: 1:08-cv-01548
ASSOCIATION,                              :  Assigned To : Kollar-Kotelly, Colleen
400 A Street, S.E.                           Assign. Date : 9/8/2008
Washington, D.C. 20003                    :  Description: TRO/PI

                                          :

ORGANIZATION OF AMERICAN                  :
HISTORIANS,
112 North Bryan Avenue                    :
Bloomington, Indiana 47408                       :

                                          :

SOCIETY OF AMERICAN ARCHIVISTS, :
17 North State Street
Suite 1425                                :
Chicago, Illinois 60602-3315
                                          :

          Plaintiffs,                     :

                                          :

     v.                                   :  Civil Action No.

                                          :

THE HON. RICHARD B. CHENEY,               :
Vice President of the United States of
  America                                 :
Eisenhower Executive Office Building
Washington, D.C. 20501                    :

                                          :

EXECUTIVE OFFICE OF THE                   :
PRESIDENT,
725 17th Street, N.W.                     :
Washington, D.C. 20503
                                          :

EXECUTIVE OFFICE OF THE                  :
PRESIDENT, OFFICE OF THE VICE            :
PRESIDENT,                               :
Eisenhower Executive Office Building     :
Washington, D.C. 20501                   :
                                         :
NATIONAL ARCHIVES AND RECORDS :
ADMINISTRATION,                          :
8601 Adelphi Road                        :
College Park, Maryland 20740-6001        :
                                         :
DR. ALLEN WEINSTEIN, ARCHIVIST :
    OF THE UNITED STATES (in his official        :
    capacity),                           :
8601 Adelphi Road                        :
College Park, MD 20740-6001              :
                                         :
        Defendants.                      :
_____:

## COMPLAINT FOR DECLARATORY, INJUNCTIVE AND MANDAMUS RELIEF

1. This is a civil action for declaratory, injunctive and mandamus relief brought under

the Administrative Procedure Act, 5 U.S.C. §§ 701, et seq. ("APA"), the Presidential Records

Act, 44 U.S.C. §§ 2201, et seq. ("PRA"), and the Declaratory Judgement Act, 28 U.S.C. §§ 2201

and 2202, challenging as contrary to law the defendants' unlawful limitations on the scope of

vice presidential records subject to the PRA. This suit arises out of the reliance by defendants

Vice President Richard B. Cheney, the Executive Office of the President ("EOP") and the Office

of the Vice President ("OVP") on Executive Order 13,233 ("Bush EO") and other guidelines

issued by these defendants to improperly and unlawfully exclude from the PRA records created

and received by the vice president in the course of conducting activities related to, or having an

effect upon, the carrying out of his constitutional, statutory, or other official ceremonial duties.

This suit also arises out of the policies and practices of the Archivist of the United States

("archivist") and the National Archives and Records Administration ("NARA") to exclude from the reach of the PRA those records that a vice president creates and receives in performance of his legislative functions and duties.

## JURISDICTION AND VENUE

2. This Court has personal and subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (action arising under the laws of the United States), 28 U.S.C. § 1361 (mandamus), 5 U.S.C. §§ 701, 702 and 706 (Administrative Procedure Act), and 28 U.S.C. §§ 2201 and 2202 (Declaratory Judgment Act).

3. Venue in this district is proper pursuant to 28 U.S.C. § 1391(e).

## PARTIES

4. Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") is a non-profit, non-partisan corporation, organized under section 501(c)(3) of the Internal Revenue code. CREW is committed to protecting the right of citizens to be informed about the activities of government officials and to ensuring the integrity of government officials. To advance its mission, CREW uses a combination of research, litigation, advocacy and public education to disseminate information to the public about public officials and their actions.

5. One of the most effective tools CREW has is the Freedom of Information Act ("FOIA"), which provides CREW access to records and information that offer valuable insight into the formulation and implementation of an administration's policies and priorities. CREW disseminates information in a variety of ways, including posting records it has received through FOIA requests on its website, www.citizensforethics.org, and on a website CREW founded, www.governmentdocs.org, and by writing and publishing reports.

6. Since 2003, CREW has filed hundreds of FOIA requests with a wide variety of government agencies and averages at least several new FOIA requests every month. At present, CREW has FOIA requests pending with over 25 different agencies, including requests with NARA, the Council on Environmental Quality and the Office of Administration ("OA").[1] CREW intends to use and make available to the public records it receives from these requests that shed light on the conduct of White House and other government officials. CREW also has an interest in accessing historical presidential and vice presidential records in a timely fashion, including the records of the current administration when they become available for public review.

7. Plaintiff Stanley I. Kutler is the E. Gordon Fox Emeritus Professor of American Institutions and Professor of Law at the University of Wisconsin, where he has taught since 1964. Professor Kutler is the founder and former editor of the journal *Reviews in American History* and the author of many books and papers on American presidents, as well as several plays, including *I, Nixon*. His published works include *Abuse of Power: The New Nixon Tapes*, a book that made extensive use of President Nixon's tapes, which were released after Professor Kutler's successful lawsuit against the National Archives and President Nixon, and *The Wars of Watergate: The Last Crisis of Richard Nixon*. In his research, Professor Kutler makes extensive use of the records of former presidents and vice presidents at presidential libraries and other NARA facilities. Professor Kutler has also written op-ed pieces and reviews for a variety of publications including *The New York Times*, *The Wall Street Journal*, *The Washington Post*, *The*

---

[1] CREW's request with the OA is the subject of pending litigation in which the district court held that OA is not an agency subject to the FOIA. CREW has appealed that decision to the U.S. Court of Appeals for the D.C. Circuit.

*Los Angeles Times, The Chicago Tribune, The Nation, Chronicles of Higher Education, The Times Literary Supplement, Slate, Salon* and the *American Prospect.* He was historical consultant for a Showtime film, *The Day Reagan Was Shot,* and made use of records from the Reagan Presidential Library for his work on the film. Professor Kutler is now working with HBO on a six-part dramatization of Watergate. Professor Kutler has an interest in accessing historical presidential and vice presidential records, including the records of the current administration, in a timely fashion for academic and other purposes.

8. Plaintiff Martin J. Sherwin is University Professor of History at George Mason University in Fairfax, Virginia. Prior to that he was the Walter S. Dickson Professor of English and American History at Tufts University. Professor Sherwin has written on the history of the nuclear age, relying in part on records of former presidents and vice presidents at presidential libraries and other NARA facilities. His most recent book, *American Prometheus: The Triumph and Tragedy of J. Robert Oppenheimer* (with Kai Bird), won the 2006 Pulitzer Prize for biography, the National Book Critics Circle Award for biography, and the English Speaking Union Book Award. Professor Sherwin is also the author of *A World Destroyed: The Atomic Bomb and the Grand Alliance*, which won the Bernath Prize awarded by the Society of Historians of American Foreign Relations as well as the American History Book Prize awarded by the National Historical Society. Professor Sherwin has also served as advisor for many documentary films on the history of the nuclear age, and he was the co-executive producer and NEH Project Director of the PBS documentary film, *Citizen Kurchatov: Stalin's Bomb Maker.* He has received fellowships from the John D. and Catherine T. MacArthur Foundation, the Guggenheim Foundation, the American Academy of Arts and Science, the National Endowment

for the Humanities, the Sloan Foundation and the Rockefeller Foundation. Professor Sherwin has an interest in accessing historical presidential and vice presidential records, including the records of the current administration, in a timely fashion for academic and other purposes.

9. Plaintiff American Historical Association ("AHA") is a non-profit membership organization founded in 1884 and incorporated by Congress in 1889 for the promotion of historical studies, the collection and preservation of historical documents and artifacts, and the dissemination of historical research. As the largest historical society in the United States, with approximately 14,000 members and over 4,000 subscribing institutions, the AHA serves as the umbrella organization for historians working in every period and geographical area. AHA's membership includes college and university faculty, public historians, independent scholars, archivists, librarians and secondary school teachers. As a part of their historical research activities, AHA's members regularly request and make use of presidential and vice presidential records held by NARA. AHA's members have an interest in accessing historical presidential and vice presidential records, including the records of the current administration, in a timely fashion for academic and other purposes.

10. Plaintiff Organization of American Historians ("OAH") is a non-profit membership organization devoted to promoting the study and teaching of American history. The OAH's 9,300 members in the United States and abroad include individual historians working in a variety of scholarly settings as well as institutions such as libraries, museums and historical societies. The OAH promotes the widest possible access to historical sources and scholarship and supports the preservation, dissemination and exhibition of historical sources. As a part of their historical research activities, OAH's members regularly request and make use of presidential and vice

6

presidential records held by NARA. OAH's members have an interest in accessing historical presidential and vice presidential records, including the records of the current administration, in a timely fashion for academic and other purposes.

11. Plaintiff Society of American Archivists ("SAA"), founded in 1936, is North America's oldest and largest national archival professional association. SAA's mission is to serve the education and information needs of its more than 5,300 individual and institutional members and to provide leadership to ensure the identification, preservation, and use of records of historical value. As early as the 1960s, SAA led the effort in addressing the challenge of managing computer-generated records and continues to advocate for information technology to provide greater access to data. SAA's regular publications include *The American Archivist*, which provides a forum for archival professionals to discuss trends and issues in archival theory and practice. SAA officers and leaders have testified before Congress and interacted with government leaders on a range of issues, including citizens' rights to access records of former presidents and other elected officials, the declassification and destruction of federal records, and other issues affecting the ability of archivists to function in a fair, professional, and successful manner. SAA's members have an interest in ensuring timely public access to historical presidential and vice presidential records, including the records of the current administration, for academic and other purposes.

12. Defendant Richard B. Cheney is the vice president of the United States and is sued in his official capacity only. Vice President Cheney is subject to the requirements of the PRA, including the obligation to segregate and preserve his vice presidential records for eventual transfer to NARA upon the conclusion of President George W. Bush's term of office. 44 U.S.C.

7

§ 2207.

13. Defendant Executive Office of the President includes the agency known as the EOP as well as its individual components, including the Office of the Vice President.

14. Defendant Office of the Vice President is a component of the EOP and is subject to the PRA, including its requirement to segregate and preserve the vice presidential records of Vice President Cheney for eventual transfer to NARA upon the conclusion of President Bush's term of office. 44 U.S.C. § 2207.

15. Defendant Dr. Allen Weinstein is the archivist of the United States and is sued solely in his official capacity. As archivist, Dr. Weinstein supervises and directs NARA. 44 U.S.C. § 2192. In that capacity, Dr. Weinstein is responsible for the preservation of both federal and presidential records, including the records of former vice presidents, and is charged with the responsibility for making them available to the public at the earliest practical date. Dr. Weinstein is subject to the requirements of the PRA, including its requirement that he assume custody and control of vice presidential records at the conclusion of the vice president's term of office and deposit them in an appropriate depository. 44 U.S.C. §§ 2203(f), 2207. Moreover, under the PRA, Dr. Weinstein has a role to play whenever an incumbent president seeks to dispose of presidential records; the president may do so only after: (1) a determination that the records no longer have administrative, historical, informational or evidentiary value; (2) obtaining in writing the views of the archivist; and (3) notifying Congress 60 days before the proposed disposal date of his intention to dispose of the records.

16. Defendant NARA is an agency of the United States operating under the direction of defendant Dr. Allen Weinstein. NARA is responsible for carrying out the archivist's

8

responsibilities under the PRA and has promulgated regulations implementing the PRA.

## STATUTORY FRAMEWORK

### The Presidential Records Act

17. The PRA was enacted to establish public ownership of presidential and vice presidential records, to impose record keeping requirements on the president and vice president, and to authorize NARA to preserve and make publicly available presidential records. Toward that end, the PRA specifies that "[t]he United States shall reserve and retain complete ownership, possession, and control of Presidential records . . ." 44 U.S.C. § 2202.

18. In addition, the PRA directs the president to "take all such steps as may be necessary to assure that the activities, deliberations, decisions, and policies that reflect the performance of his constitutional, statutory, or other official or ceremonial duties are adequately documented and that such records are maintained as Presidential records . . ." 44 U.S.C. § 2203.

19. The PRA defines "Presidential records" as:

> documentary materials . . . created or received by the President, his immediate staff, or a unit or individual in the Executive Office of the President whose function is to advise and assist the President, in the course of conducting activities which relate to or have an effect upon the carrying out of the constitutional, statutory, or other official ceremonial duties of the President.

44 U.S.C. § 2201(2).

20. The PRA excludes from its scope "personal records," which it defines to include:

> all documentary materials, or any reasonably segregable portion thereof, of a purely private or nonpublic character which do not relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President.

9

44 U.S.C. § 2201(3). Personal records include those related to the president's election activities, but only to the extent they "have no relation to or direct effect upon carrying out of constitutional, statutory, or other official or ceremonial duties of the President." Id. at § 2201(3)(C).

21. The PRA also directs that records of a vice president are to be treated "in the same manner as Presidential records" under the PRA, and directs the vice president to assume the same duties and responsibilities with respect to vice presidential records as the PRA directs the president to assume for presidential records. 44 U.S.C. § 2207. See also Armstrong v. Bush, 924 F.2d 282, 286 n.2 (D.C. Cir. 1991) ("The President, the Office of Vice President, and the components of the EOP whose sole responsibility is to advise the President are subject to the PRA and create 'presidential records.'"). Further, the PRA specifies that the archivist has the same responsibility and authority with respect to vice presidential records as the archivist has with respect to presidential records. 44 U.S.C. § 2207.

22. NARA regulations implementing the PRA define "Vice-Presidential records" as:

> documentary materials, or any reasonably segregable portion thereof, created or received by the Vice President, his immediate staff, or a unit or individual of the Office of the Vice President whose function is to advise and assist the Vice President, in the course of conducting activities which relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the Vice President. The term includes documentary materials of the kind included under the term Presidential records.

36 C.F.R. § 1270.14(d).

23. NARA regulations also provide that vice presidential records are treated "in the same manner as Presidential records" and that the archivist's authority with respect to vice presidential

10

records "shall be the same as the Archivist's authority with respect to Presidential records . . ." 36 C.F.R. § 1270.12(b).

24. Under the PRA, the president and vice president may dispose of their non-personal records only upon making a determination that the records "no longer have administrative, historical, or evidentiary value." 44 U.S.C. § 2203(c). Upon such a determination an incumbent president or vice president may destroy their non-personal records only after obtaining the written views of the archivist and only after the archivist states in writing that he does not intend to take action. Id. Furthermore, after the archivist has stated in writing that he does not intend to take action with respect to the destruction of the specified presidential or vice presidential records, the president or vice president must then notify the appropriate congressional committee 60 days before the proposed disposal date of their intention to dispose of the records. 44 U.S.C. § 2203(d).

25. The PRA confers on the archivist "responsibility for the custody, control, and preservation of, and access to, the Presidential records" upon the conclusion of the president's term of office. 44 U.S.C. § 2203(f)(1). In addition, the PRA imposes on the archivist "an affirmative duty to make such records available to the public as rapidly and completely as possible consistent with provisions of this Act." Id.

## FACTS GIVING RISE TO PLAINTIFF'S CLAIMS FOR RELIEF

26. On November 1, 2001, President Bush issued Executive Order 13,233, entitled "Further Implementation of the Presidential Records Act." Section 11(a) of the Bush EO provides in relevant part that "[p]ursuant to section 2207 of title 44 of the United States Code, the Presidential Records Act applies to the executive records of the Vice President."

11

27. Neither the PRA nor any NARA regulations implementing the PRA refer to "executive records of the Vice President." Nor is there any indication in the legislative history to the PRA that Congress intended to limit the reach of the PRA to "executive records of the Vice President."

28. After President Bush issued the Bush EO, then-Archivist John W. Carlin announced publicly his intention to abide by and implement the Bush EO. Current Archivist Dr. Allen Weinstein has not publicly repudiated that commitment and has continued to defend NARA's implementation of the Bush EO in a lawsuit to which it is a defendant, Am. Historical Ass'n v. Nat'l Archives & Records Admin., 516 F.Supp.2d 90 (D.D.C. 2007).

29. Since the issuance of the Bush EO, Vice President Cheney and the OVP have maintained in a variety of contexts that they are not part of the executive branch. For example, since 2003, the vice president and the OVP have refused to file with the Information Security Oversight Office of NARA any reports about what data they have classified or declassified in accordance with Executive Order 12,958, as amended by Executive Order 13,292, despite the obligation the executive orders impose on the OVP to comply with NARA's demand for this information. And in 2004, the OVP refused to permit NARA to conduct an on-site inspection of the procedures and facilities used by the OVP to safeguard classified national security information, despite NARA's authority and obligation to conduct such an on-site inspection pursuant to Executive Order 12,958. As grounds for both these actions, the vice president asserted that the OVP is not an entity within the executive branch.

30. The vice president and the OVP have also refused to comply with the Ethics Reform Act of 1989, which requires every executive agency to file a semi-annual report of payments

12

accepted from non-federal sources. 31 U.S.C. § 1353. On at least three occasions, by letters dated March 18, 2002, January 13, 2004, and February 25, 2005, David S. Addington, then counsel to the vice president, advised the Office of Government Ethics that the OVP would not comply with this provision. In a letter to the Office of Government Ethics dated June 2, 2008, an aide to Vice President Cheney reaffirmed the position of the OVP that the disclosure requirements for privately paid travel do not apply to the OVP, which the OVP claims is not an agency in the executive branch.

31. In 2004, the OVP refused to provide any information for inclusion in the United States Government Policy and Supporting Positions, commonly known as the "Plum Book." The 2008 edition of the Plum Book, based on information supplied by the OVP, now describes the Office of the Vice President in relevant part as follows: "[t]he Vice Presidency is a unique office that is neither a part of the executive branch nor a part of the legislative branch, but is attached by the Constitution to the latter . . ."

32. On June 26, 2008, David Addington, now chief of staff to Vice President Cheney, testified before the House Judiciary Committee that the vice president "belongs to neither" branch but is "attached by the Constitution" to Congress.

33. A recent report on White House office staff that the White House submitted to Congress does not include any staff members of the OVP. The OVP itself has refused to submit its staff list to Congress. The staff and salaries of the Senate Office of the Vice President, however, are listed publicly.
http://www.legistorm.com/office/Senate_Office_of_the_Vice_President/15.html.

34. On information and belief, the vice president and the OVP have adopted polices and

13

guidelines that exclude from the reach of the PRA all but a narrow category of vice presidential records created or received in the very limited circumstances in which the vice president deems himself to be acting as part of the executive branch.

35. On information and belief, the records of the vice president and the OVP are not maintained within the White House Office of Records Management system, nor for purposes of the PRA are they managed by the White House Office of Records Management, which manages all other presidential records for the EOP. Instead the vice president and OVP retain responsibility for managing their records.

36. On information and belief, NARA has adopted policies and guidelines, without the benefit of public notice and comment, that exclude from the reach of the PRA records generated or received by vice presidents in their congressional capacities, i.e., when they preside over the Senate and break a tie in Senate votes ("congressional records").

37. Consistent with these policies and guidelines, NARA has treated the congressional records of past vice presidents subject to the PRA as personal, not presidential, records that are not subject to the PRA and are included with a president's papers only as a matter of discretion. On information and belief, NARA also considers the congressional records of Vice President Cheney to be his personal records that he is free to dispose of at will and that are not part of the records of President Bush that will be automatically transferred to NARA at the end of this president's term and for which NARA will then assume custody and control pursuant to the provisions of the PRA.

38. The task of transferring a president's records from the White House to NARA's custody for ultimate deposit in a presidential library is enormous and NARA has been preparing

for the transition of President Bush's records from the first day of the president's administration. At the outset of President Bush's administration, NARA designated staff dedicated to handling his presidential papers at the conclusion of his administration. NARA has already leased a temporary presidential materials facility in the Dallas, Texas area to serve as NARA's archival repository for the records of the Bush administration until the presidential library is completed. In addition, NARA has hired and trained an archival staff and museum registrar who will take charge of the president's records and gifts as they arrive.

39. With prior presidents, NARA has worked closely with the White House years in advance of the end of the president's administration to account for all presidential records and arrange for their physical transfer to NARA. On information and belief, staff at the Bush White House long rebuffed NARA's similar efforts to coordinate with the White House the transfer of President Bush's presidential records well in advance of the upcoming presidential transition. For example, telephone calls made in the past several years from NARA personnel to White House personnel were not returned and the White House has, at least until recently, refused to share with NARA details about White House records and how they are stored.

40. On January 20, 2009, by operation of the PRA, the presidential records of the Bush administration will be under the custody and control of NARA. Under the express terms of the PRA, those records should include all of Vice President Cheney's records pertaining to his constitutional, statutory, or other official or ceremonial duties. But because of the policies and guidelines that the vice president, the OVP and NARA have developed, Vice President Cheney will take with him as his personal papers or otherwise dispose of a significant percentage of those records, including records that pertain to the carrying out of his legislative duties and

15

functions. As a necessary consequence, NARA and the archivist will not assume control over all vice presidential documents as defined under the PRA.

41. Once gone, these documents -- which represent an important part of our nation's history -- cannot be replicated. The destruction or alienation of Vice President Cheney's records subject to the PRA will irreparably deprive the plaintiffs, the public and future generations of important and valuable historical records and will threaten the integrity and completeness of our national history.

42. This loss to history is especially acute here, given the prominent role that Vice President Cheney has played in the development and implementation of key administration policies and objectives, ranging from the administration's energy policy to decisions about going to war with Iraq.

43. Given the unlawful policies and directives of the defendants, there is an imminent threat that even before the end of this administration, Vice President Cheney and the OVP will destroy, transfer, or otherwise dispose of many of the vice president's records under the theory they are personal records and therefore not covered by the PRA or subject to any other record keeping law or obligation. This risk is enhanced by the fact that starting as early as November, the White House will begin assembling documents for transfer to NARA and the physical transfer of many of the president's papers will occur well before January 20, 2009.

44. On July 8, 2008, CREW sent a letter to Vice President Cheney outlining CREW's concern that based on the vice president's claim that he is not part of the executive branch, he does not intend to comply fully with the terms of the PRA. To date, CREW has not received a response to this letter.

45. On July 21, 2008, CREW sent a letter to Gary Stern, General Counsel of NARA, outlining CREW's concern that based on the vice president's claim that he is not part of the executive branch, he does not intend to comply fully with the terms of the PRA and confirming a telephone conversation of that date in which Mr. Stern described NARA's policy of treating the legislative records of the vice presidents subject to the PRA as their personal records. CREW urged NARA to rethink this policy and requested that NARA issue guidance confirming that the PRA applies to all records the vice president creates or receives while carrying out all of his constitutional, statutory, official or ceremonial duties. To date, CREW has not received a response to this letter.

**PLAINTIFFS' CLAIMS FOR RELIEF**

**CLAIM ONE**

**(For a Declaratory Judgment that Guidelines Issued and/or Implemented by Vice President Cheney, the OVP and the EOP are in Violation of the PRA)**

46. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein.

47. Under the PRA, the vice president is required to maintain and preserve all records he and his office create and receive in the course of conducting activities relating to or having an effect on the carrying out of his constitutional, statutory, or other official or ceremonial duties. 44 U.S.C. §§ 2201, 2207.

48. Defendants' policies and guidelines implementing the PRA with respect to the records of the vice president, including but not limited to Executive Order 13,233, and defendants' implementation of those policies and guidelines, violate the PRA by limiting its scope to the executive records of the vice president.

17

49. Defendants' implementation of those policies and guidelines violate the PRA by excluding from its reach records that the PRA requires the vice president to maintain and preserve as presidential records.

50. Defendants' policies and guidelines unlawfully implementing the PRA and defendants' implementation of their policies and guidelines have harmed and will continue to harm the plaintiffs by depriving them of access to vice presidential records and the ability to make use of those records for historical research and to educate the public.

51. Plaintiffs are therefore entitled to relief in the form of a declaratory judgment that Vice President Cheney, the OVP and the EOP are in violation of their non-discretionary statutory responsibilities under 44 U.S.C. §§ 2201, et seq. Plaintiffs are also entitled to relief in the form of a declaration judgment that guidelines of the vice president, the OVP and the EOP implementing the PRA in a manner that excludes from its reach the records that the vice president and his office create and receive in the course of conducting activities relating to or having an effect on the carrying out of the vice president's constitutional, statutory, or other official or ceremonial duties and their implementation of those guidelines are contrary to law.

## CLAIM TWO

### (For a Writ Of Mandamus Compelling Vice President Cheney and the OVP to Comply With Their Non-Discretionary Duties Under the PRA)

52. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein.

53. The Presidential Records Act is clear and the duties thereunder plainly defined: the vice president is required to treat as subject to the PRA documentary materials, or any reasonably segregable portion thereof, that the vice president or "his immediate staff, or a unit or individual of the Office of the Vice President whose function is to advise and assist the Vice President, in the course of conducting activities" creates and that relate to or have an effect upon the carrying out of the vice president's constitutional, statutory, or other official or ceremonial duties.

54. The PRA grants the vice president no discretion to define the scope of his records that are subject to the requirements of the PRA or to exclude records that relate to the carrying out of his constitutional, statutory, or other official or ceremonial duties.

55. Plaintiffs, historians and organizations that rely on presidential and vice presidential records for their historical research and for dissemination to inform and educate the public, have a direct interest in ensuring that these records are maintained, preserved and made accessible to the public in accordance with federal law, including the PRA.

56. By adopting guidelines that restrict the PRA's coverage to only those records that the vice president considers to be "executive," while excluding records that relate to the vice president's exercise of his constitutional, statutory and other official or ceremonial duties, the vice president and the OVP are violating their clearly mandated ministerial duties under 44

19

U.S.C. §§ 2203 and 2207, thereby harming plaintiffs by denying them access to important historical documents that would aid in their historical research and shed light on the conduct of public officials.

57. Plaintiffs are therefore entitled to relief in the form of a writ of mandamus, ordering defendants Vice President Cheney and the OVP to comply with their statutory duty to treat as subject to the PRA all records of the vice president and his office that relate to the exercise of his constitutional, statutory and other official or ceremonial duties.

## CLAIM THREE

### (For a Declaratory Judgment that Guidelines Issued by the Archivist and NARA are in Violation of the PRA)

58. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein.

59. Under the PRA, the archivist and NARA must treat the records of a vice president in the same manner as presidential records and have no discretion to exempt from the scope of the PRA records of the vice president that the PRA dictates are included within the Act's coverage.

60. The PRA also imposes on the archivist and NARA the duty to take custody and control of all vice presidential records within the scope of the PRA at the conclusion of the vice president's term of office.

61. Defendant archivist's and NARA's guidelines implementing the PRA with respect to the records of the vice president violate the PRA by excluding from its scope the legislative records that a vice president creates or receives as part of his constitutional duties to preside over the Senate and break a tie in Senate votes, as well as any other records that a vice president considers to relate to his legislative functions and duties.

20

62. The archivist's implementation of guidelines that improperly exclude from the scope of the PRA vice presidential records constitutes agency action that is arbitrary, capricious, an abuse of discretion, not in accordance with law and in excess of statutory authority and limitations within the meaning of the APA, 5 U.S.C. §§ 706(2)(A) and (C).

63. Plaintiffs therefore have a right to judicial review of, and declaratory relief against, such action under 5 U.S.C. §§ 702, 704 and 706 and 28 U.S.C. § 2201, including a declaratory judgment that the vice president's and OVP's guidelines implementing the PRA in a manner that excludes from its reach all of the records that the vice president and his office create and receive in the course of conducting activities relating to or having an effect on the carrying out of the vice president's constitutional, statutory, or other official or ceremonial duties are contrary to law.

64. To the extent there has not yet been agency action with respect to implementing defendants' guidelines dictating the scope of Vice President Cheney's records subject to the PRA, plaintiffs have a right to judicial review of the lawfulness of those guidelines, which restrict the ability of the archivist and NARA to comply with their legal obligations. Plaintiffs are entitled to a declaration under 28 U.S.C. § 2201 that the guidelines, which are contrary to the terms of the PRA, are unlawful and the defendants may not implement those guidelines.

## CLAIM FOUR

**(For a Writ Of Mandamus Compelling the Archivist and NARA to Comply With Their Non-Discretionary Duties Under the PRA)**

65. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein.

66. The PRA is clear and the duties thereunder plainly defined: the archivist and NARA

are required to treat as subject to the PRA documentary materials or any reasonably segregable portion that the vice president or "his immediate staff, or a unit or individual of the Office of the Vice President whose function is to advise and assist the Vice President, in the course of conducting activities" creates and that "relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the Vice President." Equally clear is the duty the PRA imposes on the archivist and NARA to take custody and control of vice presidential records within the scope of the PRA at the conclusion of the vice president's term of office.

67. The PRA grants neither the archivist nor NARA any discretion to define the scope of the records of a vice president subject to the PRA to exclude records that relate to the carrying out of his constitutional, statutory, or other official or ceremonial duties.

68. Plaintiffs, historians and organizations that rely on presidential and vice presidential records for their historical research and for dissemination to inform and educate the public, have a direct interest in ensuring that these records are maintained, preserved and made accessible to the public in accordance with federal law, including the PRA.

69. By adopting guidelines that exclude from the scope of the PRA records that are created as part of the vice president carrying out his legislative functions and duties, the archivist and NARA are violating their clearly mandated ministerial duties under the PRA, thereby harming plaintiffs by denying them future access to important historical documents that would aid in their historical research and shed light on the conduct of public officials.

70. Plaintiffs are therefore entitled to relief in the form of a writ of mandamus, ordering defendants archivist and NARA to comply with their statutory duty to treat as subject to the PRA

records of the vice president and his office that relate to the carrying out of his legislative functions and duties.

71. To the extent there has not yet been agency action with respect to implementing defendants' guidelines dictating the scope of Vice President Cheney's records subject to the PRA, plaintiffs have a right to judicial review of the lawfulness of those guidelines, which restrict the vice president and the OVP from complying with their legal obligations.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that this Court:

(1) Declare that the guidelines of all defendants that exclude from the scope of the PRA records of the vice president and his office created and received in the course of conducting activities relating to or having an effect on the carrying out of his constitutional, statutory, or other official or ceremonial duties violate federal law;

(2) Order all defendants, in the form of injunctive and mandamus relief, to refrain from implementing guidelines that exclude from the scope of the PRA records of the vice president and his office created and received in the course of conducting activities relating to or having an effect on the carrying out of his constitutional, statutory, or other official or ceremonial duties;

(3) Award plaintiffs their costs, expenses and reasonable attorneys' fees in this action; and

(4) Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Anne L. Weismann
D.C. Bar No. 298190
Melanie Sloan
D.C. Bar No. 434584
Citizens for Responsibility and
  Ethics in Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C. 20005
202-408-5565

Dated: September 8, 2008

Attorneys for Plaintiffs