UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY AND
ETHICS IN WASHINGTON, *et al.*

    Plaintiffs,

      v.

RICHARD B. CHENEY, *et al.*,

    Defendants.

Civil Action No. 08-1548 (CKK)

**MEMORANDUM OPINION**
(September 20, 2008)

      Plaintiffs, Citizens for Responsibility and Ethics in Washington ("CREW") and a number of individual historians, archivists, and organizations of archivists and historians, bring the above-captioned action seeking declaratory, injunctive, and mandamus relief against Defendants, Vice President Richard B. Cheney in his official capacity, the Executive Office of the President ("EOP"), the Office of the Vice President ("OVP"), the National Archives and Records Administration ("NARA"), and Dr. Allen Weinstein, Archivist of the United States, in his official capacity. Plaintiffs allege that Vice President Cheney, the OVP, and the EOP have improperly excluded records from the Presidential Records Act, 44 U.S.C. § 2201 *et seq.* ("PRA"), and seek a declaratory judgment or alternatively a writ of mandamus based on those allegations. Plaintiffs also allege that NARA and the Archivist have improperly excluded records from the PRA and failed to comply with the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, and seek a declaratory judgment or alternatively a writ of mandamus based on those allegations.

Currently pending before the Court is Plaintiffs' Motion for a Preliminary Injunction, which seeks to preserve all records potentially at issue in this litigation during the pendency of the litigation.  Based upon a thorough review of the parties' filings in connection with Plaintiffs' Motion for Preliminary Injunction, the two conference calls held on the record, and the relevant statutes and case law, the Court shall GRANT Plaintiffs' [3] Motion for Preliminary Injunction and shall order Defendants–Vice President Cheney, the OVP, the EOP, NARA, and the Archivist–to preserve throughout the pendency of this litigation all documentary material, or any reasonably segregable portion thereof created or received by the Vice President, his staff, or a unit or individual of the Office of the Vice President whose function is to advise and assist the Vice President, in the course of conducting activities which relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the Vice President, without regard to any limiting definitions that Defendants may believe are appropriate.

## I.  BACKGROUND

*A.    The Presidential Records Act*

The Presidential Records Act defines the term "Presidential records" as:

> documentary materials, or any reasonably segregable portion thereof, created or received by the President, his immediate staff, or a unit or individual of the Executive Office of the President whose function is to advise and assist the President, in the course of conducting activities which relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President.

44 U.S.C. § 2201(2).  Pursuant to the PRA, "[t]he United States shall reserve and retain complete ownership, possession, and control of Presidential records," 44 U.S.C. § 2202, and the President is directed to "take all such steps as may be necessary to assure that the activities,

deliberations, decisions, and policies that reflect the performance of his constitutional, statutory, or other official or ceremonial duties are adequately documented and that such records are maintained as Presidential records . . . .," *id.* § 2203.

The PRA differentiates "Presidential records" from "personal records," defining "personal records" as "all documentary materials, or any reasonably segregable portion thereof, of a purely private or nonpublic character which do not relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President." *Id.* § 2201(3). Further, the PRA provides that documentary materials produced or received by the President, his staff, or units or individuals in the EOP whose function is to advise and assist the President "shall, to the extent practicable, be categorized as Presidential records or personal records upon their creation or receipt and be filed separately." *Id.* § 2203(b).

The PRA specifically directs that Vice-Presidential records are subject to the provisions of the PRA "in the same manner as Presidential records," and provides that "[t]he duties and responsibilities of the Vice President, with respect to Vice-Presidential records, shall be the same as the duties and responsibilities of the President under [the PRA] with respect to Presidential records." *Id.* § 2207. During the President and Vice President's term in office, they may dispose of Presidential or Vice-Presidential records "that no longer have administrative, historical, information, or evidentiary value," but only after complying with particular requirements for notifying both the Archivist and the appropriate congressional committee of the planned disposal. *Id.* § 2203(c)-(d). Significantly, the PRA provides that upon conclusion of the President and Vice President's last term in office, "the Archivist of the United States shall assume responsibility for the custody, control, and preservation of, and access to," Presidential and Vice-

Presidential Records. *Id.* § 2203(f)(1). The PRA further imposes a duty on the Archivist to "make such records available to the public as rapidly and completely as possible consistent with the provisions of the [PRA]." *Id.*

      B.     *Plaintiffs' Allegations and Procedural History*

     As noted above, the PRA broadly defines Vice-Presidential records as

> documentary materials, or any reasonably segregable portion thereof, created or received by the [Vice] President, his immediate staff, or a unit or individual of the [Office of the Vice President] whose function is to advise and assist the [Vice] President, in the course of conducting activities which relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the [Vice] President.

*Id.* §§ 2201(2), 2207. Significantly, the PRA does not contain any further definitions of the terms "constitutional, statutory, or other official or ceremonial duties of the [Vice] President." *See generally* 44 U.S.C. § 2201, *et seq.* Plaintiffs' Amended Complaint alleges that Defendants have improperly and unlawfully placed limitations on the scope of Vice-Presidential records subject to the PRA. Am. Compl. ¶ 1. In particular, Plaintiffs allege that Vice President Cheney, the OVP, and the EOP have or will "improperly and unlawfully exclude from the PRA records created and received by the vice president in the course of conducting activities related to, or having an effect upon, the carrying out of his constitutional, statutory, or other official [or] ceremonial duties." *Id.* Plaintiffs also challenge the alleged "policies and practices" of the Archivist and NARA "to exclude from the reach of the PRA those records that a vice president creates and receives in the performance of his legislative functions and duties." *Id.*

     Plaintiffs filed their initial Complaint in this action on September 8, 2008, along with a Motion for Preliminary Injunction. On September 9, 2008, the Court contacted counsel for

Plaintiffs and Defendants by telephone to schedule a conference call on the record regarding

Plaintiffs' Motion for Preliminary Injunction.  During that phone call, the Court noted the

significant overlap between the issues raised in Plaintiffs' Complaint and their Motion for

Preliminary Injunction.  The Court therefore requested that counsel for each side discuss with

their clients the possibility of addressing Plaintiffs' Motion for Preliminary Injunction through a

decision on the merits of Plaintiffs' Complaint, with the benefit that all parties would be afforded

the opportunity to provide more fulsome briefing on the merits than would be possible under the

truncated preliminary injunction schedule set forth in Local Civil Rule 65.1.  The Court noted a

necessary precondition to addressing Plaintiffs' Motion for Preliminary Injunction through a

decision on the merits: Defendants would have to agree to preserve all documents potentially at

issue in this litigation so that Plaintiffs could receive full relief in the event they ultimately

prevailed on the merits of their Complaint.

On September 10, 2008, the Court held a conference call on the record with counsel for

all parties participating during which all parties agreed to the Court's proposal to proceed via a

thorough briefing on the merits of Plaintiffs' Complaint and the Court set an expedited schedule

for that merits briefing.  As the Court stated in its Order documenting that call,

> Defendants agreed that they will preserve–and will not transfer out of their
> custody and control–any and all records potentially at issue in this litigation
> during its pendency, as well as during any ensuing appeal.  The parties agreed to
> memorialize this agreement through a memorandum of understanding, stipulation,
> or proposed consent order for the Court's approval, and to file such a document
> no later than 5:00 p.m. on Friday, September 12, 2008.

See 9/10/08 Order, Docket No. [4].  At approximately 3:00 p.m. on Friday, September 12, 2008,

the Court was advised by both parties that they had been unable to reach the type of agreement

contemplated by the Court's September 10, 2008 Order. *See* 9/12/08 Minute Order. The parties

then faxed to the Court copies of their competing agreement proposals, which the Court

reviewed. After reviewing those proposals, the Court held a conference call on the record with

counsel for all parties participating. *Id.* Although there were differences between the language in

the parties' proposals as to the records at issue, during the conference call the Court identified

two principal discrepancies between the parties' proposed agreements: (1) Defendants' proposal

did not bind all Defendants, but only covered the OVP, and (2) while both parties' proposals

provided that documents at issue in this litigation could be transferred to NARA, Defendants'

proposal did not bind NARA or the Archivist, and contained no specifications as to how NARA

or the Archivist would treat any transferred documents. "When it became clear that no

agreement could be reached covering all Defendants, the Court reimposed the briefing schedule

required by Plaintiff's motion for preliminary injunction, which had previously been mooted by

the parties' agreement to have the case resolved on the merits, contingent on the agreement

described above." *Id.*

As required by the Court and Local Civil Rule 65.1, Defendants filed their Opposition to

Plaintiff's Motion for Preliminary Injunction on September 16, 2008. That Opposition asserted

that

> The Vice President and the Office of Vice President ("OVP") have been carrying
> out since January 20, 2001–and intend to continue to carry out–their obligations
> under the Presidential Records Act with respect to documentary materials that
> relate to or have an effect upon the Vice President's constitutional, statutory or
> other official and ceremonial duties, both executive-related and legislative-related
> duties.

Defs.' Opp'n at 1. Defendants' Opposition is supported by two Declarations, declared under

penalty of perjury, filed by Claire M. O'Donnell, Assistant to the Vice President and Deputy

Chief of Staff, and Nancy Kegan Smith, Director of the Presidential Materials Staff in the Office

of Presidential Libraries at the National Archives and Records Administration ("NARA").  *See*

*id.*, Exs. 1 and 2.  In particular, insofar as the gravamen of Plaintiff's Motion for Preliminary

Injunction is their allegation that Defendants will not comply with 44 U.S.C. § 2207, and their

allegation that Defendants have limited their compliance with that Section based on Executive

Order 13,233,[1] Defendants' Opposition and Declarations specifically assert that Defendants

*are* complying with 44 U.S.C. § 2207 and deny that either the Vice President or the OVP have

relied upon Executive Order 13,233 or any guidelines issued by the other Defendants to exclude

any vice presidential records from the requirements of Section 2207.  *See* Defs.' Opp'n at 8;

O'Donnell Decl. ¶¶ 7-8.

    Noting the foregoing, on September 16, 2008, the Court issued an Order requiring

Plaintiffs to "respond to the issue of whether, in light of Defendants' sworn Declarations, a basis

exists for the Court to issue the preliminary injunction Plaintiff[s] request[] in connection with

Defendants' compliance with the PRA."  9/16/08 Order, Docket No. [10].  Plaintiffs filed their

Reply, as required, on September 17, 2008, and asserted that "[f]ar from supplying the requisite

assurances that defendants are complying fully with the [PRA], the defendants' declarations offer

carefully parsed language establishing only that defendants are preserving two subsets of vice

presidential records."  Pls.' Reply at 1.  Plaintiffs' Reply thus highlighted a potential ambiguity in

Ms. O'Donnell's Declaration: Ms. O'Donnell defined the term "vice presidential records" to

---

[1] Executive Order 13,233 provides, in relevant part, "pursuant to section 2207 of title 44 of the United States Code, the Presidential Records Act applies to the executive records of the Vice President."  *See* 66 Fed. Reg. 56,025.

include the definition of the term set forth in the PRA and discussed above.  *See* O'Donnell Decl.

¶ 5.  Importantly, however, Ms. O'Donnell further stated that "The constitutional, statutory, or

other official or ceremonial duties of the Vice President include both the functions of the Vice

President as President of the Senate and the functions of the Vice President specially assigned to

the Vice President by the President in the discharge of executive duties and responsibilities."  *Id.*

The Court therefore inquired of Defendants:

> Does this statement indicate that Defendants interpret the phrase "the
> constitutional, statutory, or other official or ceremonial duties of the Vice
> President" as exclusively encompassing "the functions of the Vice President as
> President of the Senate" and "the functions of the Vice President specially
> assigned to the Vice President by the President in the discharge of executive
> duties and responsibilities?

*See* 9/17/08 Order, Docket No. [12].

Defendants' Response to the Court's question, filed at noon on September 18, 2008,

stated that "the short answer to the Court's question is yes."  *See* Defs.' Resp. at 1.  Defendants'

Response is supported by Ms. O'Donnell's Supplemental Declaration, in which she avers that

> all the constitutional, statutory, or other official or ceremonial duties of the Vice
> President fall within either (a) the category of functions of the Vice President
> specially assigned to the Vice President by the President in the discharge of
> executive duties and responsibilities or (b) the category of the functions of the
> Vice President as President of the Senate.

Suppl. O'Donnell Decl. ¶ 5.  With Defendants' Response to the Court's question now filed,

Plaintiff's Motion for Preliminary Injunction is ripe for the Court's review and resolution.[2]

--------

[2] On September 19, 2008, Plaintiffs filed a Motion to Set Aside Briefing Schedule
regarding the merits briefing schedule set by the Court on September 10, 2008.  The same day,
the Court struck Plaintiffs' Motion to Set Aside Briefing Schedule as an improperly filed sur-
reply, which Plaintiffs had not sought leave of Court to file.  *See* 9/19/08 Minute Order.  The
Court has not considered the arguments raised in Plaintiffs' Motion to Set Aside Briefing
Schedule in resolving the instant Motion for Preliminary Injunction.  *Id.*  However, the Court did

## II.  LEGAL STANDARDS

In assessing whether to grant preliminary injunctive relief, a court must balance four factors: (1) whether the movant is substantially likely to succeed on the merits; (2) whether the movant would suffer irreparable injury if the injunction were not granted; (3) whether an injunction would substantially injure other interested parties; and (4) whether the public interest would be furthered by the injunction.  *See Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998) (citing *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)).

In applying this four-factored standard, district courts employ a sliding scale under which a particularly strong showing in one area can compensate for weakness in another.  *See CityFed Fin.*, 58 F.3d at 747.  As the Fourth Circuit stated in a case cited approvingly by the D.C. Circuit:

> There is a correlation between the likelihood of plaintiff's success and the probability of irreparable injury to him.  If the likelihood of success is great, the need for showing the probability of irreparable harm is less.  Conversely, if the likelihood of success is remote, there must be a strong showing of the probability of irreparable injury to justify issuance of the injunction.

*Murrow Furniture Galleries, Inc. v. Thomasville Furniture Indus. Inc.*, 889 F.2d 524, 527 (4th Cir. 1989); *see Davenport v. Int'l Bhd. of Teamsters*, 166 F.3d 356, 366 (D.C. Cir. 1999) (citing *Murrow Furniture Galleries* with approval).

Further,  the D.C. Circuit has explained:

> To justify a temporary injunction it is not necessary that the plaintiff's right to a final decision, after a trial, be absolutely certain, wholly without doubt; if the other elements are present (i.e., the balance of the hardships tips decidedly toward

---

temporarily suspend the merits briefing schedule in this case pending the issuance of this Memorandum Opinion, and will be contacting all parties regarding a schedule for proceeding with this litigation.  *Id.*

> plaintiff) it will ordinarily be enough that the plaintiff has raised substantial
> questions going to the merits so serious, substantial, difficult and doubtful, as to
> make them a fair ground for litigation and thus for more deliberative
> investigation.

*Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 81, 844 (D.C. Cir. 1977)

(quoting *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953)).  As such,

"[o]ne moving for a preliminary injunction assumes the burden of demonstrating either a

combination of probable success and the possibility of irreparable injury or that serious questions

are raised and the balance of hardships tips sharply in his favor."  *Id.* (quoting *Charlie's Girls,*

*Inc. v. Revlon, Inc.*, 483 F.2d 953, 954 (2d Cir. 1973) (per curiam)).  Significantly, the D.C.

Circuit has concluded that "this approach is entirely consistent with the purpose of granting

interim injunctive relief, whether by preliminary injunction or by stay pending appeal" because

"such relief is [generally] preventative or protective; it seeks to maintain the status quo pending

final determination on the merits of the suit."  *Id.*; *see also Ramirez v. U.S. Customs and Border*

*Prot.*, 477 F. Supp. 2d 150, 155, 159 (D.D.C. 2007) (granting preliminary injunction based on

balancing of factors as set forth in *Holiday Tours*).

### III.  DISCUSSION

As background, the Court reiterates that the PRA defines Vice-Presidential records as

> documentary materials, or any reasonably segregable portion thereof, created or
> received by the [Vice] President, his immediate staff, or a unit or individual of the
> [Office of the Vice President] whose function is to advise and assist the [Vice]
> President, in the course of conducting activities which relate to or have an effect
> upon the carrying out of the constitutional, statutory, or other official or
> ceremonial duties of the [Vice] President.

44 U.S.C. §§ 2201(2), 2207.  Again, the PRA does not provide any further definition of the terms

"constitutional, statutory, or other official or ceremonial duties of the [Vice] President." *Id.*

Nevertheless, Defendants' Response to the Court's latest question makes unmistakably clear that

Defendants apply a narrowing interpretation to that language.  Specifically, Ms. O'Donnell

avers–and Defendants' Response states–that:

> all the constitutional, statutory, or other official or ceremonial duties of the Vice
> President fall within either (a) the category of functions of the Vice President
> specially assigned to the Vice President by the President in the discharge of
> executive duties and responsibilities or (b) the category of the functions of the
> Vice President as President of the Senate.

Suppl. O'Donnell Decl. ¶ 5; Defs.' Resp. at 1.  Defendants thus define the terms used in the

PRA– the "constitutional, statutory, or other official or ceremonial duties of the [Vice]

President"–to include *only* those "functions of the Vice President specially assigned to the Vice

President by the President in the discharge of executive duties and responsibilities" and

"functions of the Vice President as President of the Senate."  *See id.*

Plaintiffs' Amended Complaint, however, alleges that Defendants have improperly and

unlawfully placed limitations on the scope of Vice-Presidential records subject to the PRA.  Am.

Compl. ¶ 1.  Accordingly, the seminal issue in this case is whether Defendants' narrowing

interpretation of the PRA's language is supported, as a matter of law.  Having isolated that

seminal issue through its pointed question to Defendants, the Court now turns to considering

whether Plaintiffs are entitled to the preliminary injunction they seek.

> A.   *Plaintiffs Have Established a Close and Serious Legal Question As To Which
>      They Have a Likelihood of Success*

In their Opposition to Plaintiffs' Motion for Preliminary Injunction and Response to the

Court's question, Defendants suggest that Plaintiffs cannot demonstrate any likelihood of success

on the merits of their legal claims because Defendants have followed the requirements of the

PRA with respect to Vice-Presidential records.  *See* Defs.' Opp'n at 17; Defs.' Resp. at 2-3.  As support for this assertion, Defendants cite to Ms. O'Donnell's sworn Declarations.  *Id.*  In turn, those Declarations make clear that Defendants believe they are complying with their obligations under the PRA to preserve documentary material reflecting the "constitutional, statutory, or other official or ceremonial duties of the [Vice] President" by preserving *only* documentary material reflecting the "functions of the Vice President specially assigned to the Vice President by the President in the discharge of executive duties and responsibilities" and the "functions of the Vice President as President of the Senate."  *See* O'Donnell Decl. ¶¶ 5-7; Suppl. O'Donnell Decl. ¶ 5.

Ms. O'Donnell's Declarations thus state Defendants' apparent legal conclusion as to the proper interpretation of the PRA's statutory language.  *See id.*  However, both Ms. O'Donnell's Declarations and Defendants' pleadings are bereft of any legal analysis demonstrating that Defendants' interpretation is correct as a matter of law or any identification of legal authority that would allow Defendants to place limitations on the PRA's statutory language.   In short, Ms. O'Donnell's Declarations and Defendants' pleadings offer only their *ipse dixit* that Defendants' narrowing definition is the correct one.  Further, Ms. O'Donnell identifies herself as Assistant to the Vice President and Deputy Chief of Staff, and asserts that she is "responsible for all aspects of administration and operations of the Office of the Vice President, including records management."  O'Donnell Decl. ¶ 1.  Nevertheless, neither of Ms. O'Donnell's Declarations provides any factual assertion–or even suggests–that Vice President Cheney *only* engages in activities that fall within the two narrow categories that Defendants assert comprise all of his "constitutional, statutory, or other official or ceremonial duties."  44 U.S.C.  § 2201(2).

Ms. O'Donnell's legal conclusions need not be credited by the Court; indeed, whether

Defendants' narrowing definition is correct as a matter of law is a complex issue of first

impression and the seminal issue that this Court will be required to resolve in addressing the

merits of Plaintiffs' Amended Complaint.  Nor has Ms. O'Donnell offered any factual grounds

on which the Court could determine that Plaintiffs' allegations–that Defendants have

misinterpreted the PRA–are unfounded.  In addition, Defendants' Declarations and Pleadings fail

to explain why a narrowing definition of the PRA's statutory language would be appropriate in

light of the context in which the PRA was passed, and the concerns it was meant to address.

Significantly, prior to 1974, the wide array of materials generated during a presidency were

generally considered the property of that president when his term ended, and Presidents were not

subject to any "specific, express legal duty to create or maintain their papers."  *See Nixon v.*

*United States*, 978 F.2d 1269, 1276 (D.C. Cir. 1992); *Nixon v. Adm'r of Gen. Servs.*, 433 U.S.

425, 431 (1977).  In the midst of the Watergate investigation, however, Congress passed the

Presidential Recordings and Materials Preservation Act ("PRMPA"), which transferred control of

President Richard Nixon's presidential records to the Administrator of General Services (later

changed to the Archivist), and directed the Administrator to develop regulations providing for

public access to the materials.  *See* 44 U.S.C. § 2111 note.  The PRMPA was upheld as

constitutional in *Nixon v. Administrator of General Services*, 433 U.S. 425 (1977), and in 1978,

Congress passed the Presidential Records Act, which addressed the issue of public access to

presidential papers in a broader context.

The Supreme Court's opinion in *Nixon v. Administrator of General Services* provides a

helpful background for understanding the context in which the PRA was passed, as well as the

concerns that animated its enactment:

13

> The legislative history of the [PRMPA] clearly reveals that, among other purposes, Congress acted to establish regular procedures to deal with the perceived need to preserve [Presidential] materials for legitimate historical and governmental purposes.  An incumbent President should not be dependent on happenstance or the whim of a prior President when he seeks access to records of past decisions that define or channel current governmental obligations.  Nor should the American people's ability to reconstruct and come to terms with their history be truncated by an analysis of Presidential privilege that focuses only on the needs of the present.  Congress can legitimately act to rectify the hit-or-miss approach that has characterized past attempts to protect these substantial interests by entrusting the materials to expert handling by trusted and disinterested professionals.

433 U.S. at 452-53.  Congress also sought "to restore public confidence in our political processes by preserving the materials as a source for facilitating a full airing of [historical] events." *Id.* at 453.  In flatly asserting that the PRA's statutory language is limited in the manner that they apparently perceive it to be, Defendants do not explain how a narrowing construction accords with these myriad concerns or accomplishes Congress's goals.

For their part, Plaintiffs argue that Defendants have misinterpreted the PRA by narrowly construing it.  *See, e.g.*, Pls.' Reply at 3.  Plaintiffs' Amended Complaint, Motion for Preliminary Injunction, and Reply also proffer allegations and examples of situations in which the Vice President carries out activities that appear to be excluded from Defendants' narrowing definitions, but that might nevertheless be considered "related to the [Vice President's] constitutional, statutory, or other official or ceremonial functions."  44 U.S.C. § 2201(2).  Plaintiffs further note that any documents created in connection with such activities would not be preserved under Defendants' narrowed interpretation of the PRA.  *See* Pls.' Reply at 1-2.  If Plaintiffs are correct that Defendants have improperly narrowed the PRA and that Defendants' definition is not correct as a matter of law, then Plaintiffs would have a 100% likelihood of

success on the merits because Defendants have admitted to applying their narrowing definition in carrying out their obligations under the PRA.

At this point, the Court has not received briefing from Defendants on the legal grounds that support their narrowed definition. Such briefing is forthcoming, pursuant to an expedited schedule, which will ultimately resolve the seminal legal question at issue. The Court cannot resolve that seminal issue at this stage based on the factual record and legal briefing before it. However, even based on the minimal briefing currently before the Court, it is clear that the legal question presented by this case is a complex issue of first impression. At a minimum, the seminal legal question in this case–whether Defendants' narrowing interpretation is correct and/or supported as a matter of law– is "serious, substantial, difficult and doubtful." *Holiday Tours*, 559 F.2d at 844. The Court therefore concludes that Plaintiffs have established a sufficient showing to carry their burden under the first prong of the preliminary injunction standard.[3]

B.    *Plaintiffs Have Demonstrated a High Probability of Irreparable Injury*

Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction also argues that

---

[3] In the context of discussing Plaintiffs' likelihood of success on the merits, Defendants argue that this action does not present a justiciable case or controversy and that Plaintiffs lack standing to pursue their claims. *See* Defs.' Opp'n at 16-19. Each of these arguments is premised on an assumption that Defendants' narrowed interpretation of the PRA's statutory language is legally defensible. However, as that is not a foregone conclusion, Defendants have not established that Plaintiffs lack standing at this time.

The Court also notes that Plaintiffs' Motion for Preliminary Injunction argues that Defendants' construction of the PRA's language is judicially reviewable, *see* Pls.' Mot. for PI at 16-21, and Defendants have not challenged that assertion, *see generally* Defs.' Opp'n and Resp. On this undeveloped record, the Court simply acknowledges that the D.C. Circuit's decision in *Armstrong v. EOP*, 1 F.3d 1274 (D.C. Cir. 1993), recognizes that there are decisions regarding the classification of records in connection with the PRA that are reviewable by courts. *See id.* at 1291-94.

Plaintiffs cannot establish that they will suffer irreparable injury in the absence of a preliminary injunction. *See* Defs.' Opp'n at 10-13. Again, this argument is premised on Defendants' claim that they are complying with the PRA, which in turn, must be viewed through the lens of Defendants' narrowed definition of the PRA's statutory language. At this point there has been no judicial determination that Defendants' narrowed interpretation is correct as a matter of law. Nor has a factual predicate been established as to whether or not the Vice President in fact creates or receives records relating to his "constitutional, statutory, or other official or ceremonial duties" that are not encompassed by either of the Defendants' narrowed definitions. 44 U.S.C. § 2201(2). What is clear at this point, however, is that Defendants admit that they interpret the PRA to cover only documentary material reflecting the "functions of the Vice President specially assigned to the Vice President by the President in the discharge of executive duties and responsibilities" and the "functions of the Vice President as President of the Senate." *See* O'Donnell Decl. ¶¶ 5-7; Suppl. O'Donnell Decl. ¶ 5; Defs.' Resp. at 2-3. Thus, Defendants do not treat any records that do not fall within their narrowed definition as protected by the PRA.

The Court does not (and cannot on this undeveloped factual record) reach a determination on the merits of Plaintiffs' Amended Complaint. The Court is required to–and does–assume that Defendants will abide by their legal obligations and "act in good faith." *Armstrong,* 1 F.3d at 1293. However, Defendants admit that they have interpreted the PRA in a narrow fashion and have only preserved documentary material in accordance with that narrow interpretation. *See* O'Donnell Decl. ¶¶ 5-7; Suppl. O'Donnell Decl. ¶ 5; Defs.' Resp. at 2-3. As such, if Defendants' interpretation is not correct as a matter of law, there is no question that documents that may be entitled to PRA protection will not receive the statute's protections. Those

unprotected documents could be transferred to other entities, destroyed, or not preserved, and if

any of these events occur, the damage is inherently irreparable; once documentary material is

gone, it cannot be retrieved. *See CREW v. EOP*, Civil. A. No. 07-1707 (HHK/JMF), Report and

Recommendation (D.D.C. Oct. 19, 2007), slip op. at 3 ("the threat of [] obliteration [of

documentary materials] is a text book example of irreparable harm.").

In reaching the conclusion that Plaintiffs have demonstrated a substantial possibility of

irreparable injury, the Court takes note of the procedural history of this case. *See* Section I,

*supra*. In particular, Defendants were unwilling–in lieu of litigating Plaintiffs' Motion for

Preliminary Injunction–to agree to preserve all records potentially at issue in this litigation, and

to treat them as if they were covered by the PRA until a decision on the merits of Plaintiffs'

claims could be issued. Defendants were only willing to agree to a preservation order that

tracked their narrowed interpretation of the PRA's statutory language. This unwillingness

suggests that there is, in fact, a substantive difference between "all records potentially at issue in

this litigation," as described by the PRA's statutory language, and Defendants' narrowed

interpretation. This unwillingness also heightens the Court's concern that, in the absence of a

preliminary injunction, all records potentially covered by the PRA as a matter of law, will not be

preserved through the termination of this litigation.

Finally, Plaintiffs' assertion that they will suffer irreparable injury in the absence of a

preliminary injunction is significantly bolstered by the Declarations they proffer in support of

their Reply. *See* Pls.' Reply, Exs. 1 and 2. Plaintiffs have proffered sworn Declarations from

two historians describing the use that they intend to make of the records potentially at issue in

this litigation when they become available to the public.[4]  The declarations also note the

historical significance of those records both to future members of the executive branch and to

members of the public.[5]  If, however, records that are correctly encompassed in the PRA's

statutory language are not preserved, they will not be available for future generations.

C.      *A Preliminary Injunction Would Not Substantially Injure Other Interested Parties*

In contrast to the injury that Plaintiffs have suffered and will continue to suffer if

Defendants have improperly adopted a narrowed interpretation of the PRA's statutory language,

the Court perceives no injury to Defendants that would arise from a preliminary injunction or any

---

[4] On this point, Plaintiffs offer the Declaration of Stanley I. Kutler, one of the named Plaintiffs in this case, and the E. Gordon Fox Emeritus Professor of American Institutions and Professor of Law at the University of Wisconsin.  *See* Pls.' Reply Ex. 1 (Kutler Decl.) ¶ 1. Professor Kutler is the author of many books, papers, and plays on American presidents, as well as the founder and former editor of the journal *Reviews in American History*.  *Id.* ¶ 2.  Professor Kutler avers that in his research, he makes "extensive use of the records of former presidents and vice presidents at presidential libraries and other [NARA] facilities."  *Id.* ¶ 3.  Professor Kutler also states that "[i]n the future, [he plans] to research Vice President Cheney's advocacy of something he calls the 'unitary theory' of our government," and notes that "[t]he vice president's emails with his staff and his other papers are crucial to understanding the unitary theory and [Professor Kutler's] writing on this subject."  *Id.* ¶ 6.

[5] In this respect, Plaintiffs proffer the Declaration of Anna Kasten Nelson, a member of the Organization of American Historians, one of the named Plaintiffs in this action.  Pls.' Reply, Ex. 2 (Nelson Decl.) ¶ 1.  Dr. Nelson is the Distinguished Historian in Residence at American University, where she teaches courses related to the history of American foreign relations.  *Id.* Dr. Nelson states that she has "done research in five presidential libraries and with the Nixon papers," and has used this research to publish "more than 25 articles, essays and reviews, edited a forthcoming book and [is] completing another book on presidents and the organization of the national security process."  *Id.* ¶ 3.  Dr. Nelson asserts that "[h]istory has show[n] us that vice presidents produce useful records illuminating the White House policies," and avers that she "cannot imagine writing about the process of making foreign policy during the [President George W.] Bush administration without the records created by [Vice President Cheney's] office."  *Id.* ¶ 4.  Dr. Nelson states that, if Vice-Presidential records are not preserved as required by the PRA, "not only will [she] be harmed in [her] ability to conduct presidential research, but the American public will be limited in its ability to understand the events of the past. . . ."  *Id.* ¶ 5.

prejudice that would result from requiring Defendants to preserve all records potentially at issue in this litigation while this action is ongoing.  The Court expects the duration of this litigation to be limited because the Court has set an expedited briefing schedule to address its merits.  That expedited schedule should allow a full resolution of the issues raised in Plaintiffs' Amended Complaint in advance of the transition between presidential administrations in January 2009.

Significantly, Defendants' Opposition does not suggest that they would suffer any injury or prejudice from the issuance of a preliminary injunction.  *See generally* Defs.' Opp'n.  To the contrary, a preliminary injunction requiring Defendants to preserve all documents covered by the PRA's statutory language without regard to Defendants' narrowed interpretation does not impose burdensome obligations on Defendants, as it only requires that they preserve records that have been, or otherwise would be, created.  Further, the Court notes that a preliminary injunction need not impede the transfer of Vice-Presidential records to NARA and/or the Archivist, either before or after January 20, 2009, as required by the PRA and NARA's ordinary practices.  *See* Defs.' Opp'n, Ex. 2 (Decl. of Nancy Kegan Smith, Director of the Presidential Materials Staff in the Office of Presidential Libraries at NARA) (describing NARA's ordinary practices for handling Presidential and Vice-Presidential records).  A preliminary injunction can adequately address the concerns raised by Plaintiffs' Motion for Preliminary Injunction by simply requiring that any and all records transferred to NARA be treated as if fully covered by the PRA, without regard to any narrowing definitions that Defendants suggest are appropriate, during the pendency of this litigation.

D.    *The Public Interest Would Be Furthered By a Preliminary Injunction*

Finally, the Court concludes that the public interest is undoubtedly served by ensuring

19

that all documentary material potentially encompassed by the PRA's statutory language is actually preserved as Congress saw fit in enacting the PRA.  In considering this factor, the Court is guided by the Supreme Court's discussion of the purposes underlying the PRA's enactment in *Nixon v. Administrator of General Services*, as explained above.  The PRA serves to "preserve [Presidential and Vice-Presidential] materials for legitimate historical and governmental purposes" and to ensure that future members of the executive branch can access historical records as necessary in carrying out their duties.  433 U.S. at 452-53.  The PRA also serves the public interest by ensuring the "preservation of an accurate and complete historical record" by "trusted and disinterested professionals," and thus enhances "the public confidence in our political processes."  *Id.* at 452-53 and n.14 (quoting *Nixon v. Administrator of General Servs.*, 408 F. Supp. 321, 338-39 (D.D.C. 1976)).

These public interests are of the utmost significance and, as discussed above, are not and will not be fully protected if Defendants' narrowed interpretation of the PRA's statutory language is incorrect as a matter of law.   Defendants admit that they have only preserved under the PRA those records that they have unilaterally determined to be encompassed in the phrase "documentary material . . . created or received by the [Vice] President . . . in the course of conducting activities which relate to or have an effect upon the carrying out of [his] constitutional, statutory, or other official or ceremonial duties . . . ."  44 U.S.C. § 2201(2).  The American public, however, has a right to the preservation of *all* records encompassed by the PRA's statutory language.  As such, until the Court is able to determine whether Defendants' narrowed interpretation is legally supported, the public interest favors the issuance of a preliminary injunction.

E.       *The Nature of the Court's Preliminary Injunction Order*

Based upon the foregoing consideration of the four factors relevant to Plaintiffs' Motion

for Preliminary Injunction, the Court finds that Plaintiffs have carried their burden of

demonstrating that a preliminary injunction is necessary and appropriate.  The Court further finds

that, based upon the factual record before the Court at this time, the preliminary injunction must

bind all Defendants.  During the September 12, 2008 conference call on the record in this case,

counsel for Defendants argued that any preservation order need not bind all Defendants.  As the

Court noted during that conference call, however, Defendants have not established a factual

record to support their counsel's assertion.  Defendants' Opposition and Response likewise fail to

provide factual support for defense counsel's assertion.  Accordingly, on the current record and

based on the fact that Plaintiffs' Amended Complaint alleges that all Defendants have, in various

ways, improperly interpreted the PRA's statutory language, the Court must conclude that its

preliminary injunction should, at this time, bind all Defendants to this action.

## IV. CONCLUSION

For the foregoing reasons, the Court shall GRANT Plaintiffs' [3] Motion for Preliminary

Injunction.  As set forth in the Order accompanying this Memorandum Opinion, the Court shall

order all Defendants to preserve throughout the pendency of this litigation all documentary

material, or any reasonably segregable portion thereof created or received by the Vice President,

his staff, or a unit or individual of the Office of the Vice President whose function is to advise

and assist the Vice President, in the course of conducting activities which relate to or have an

effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties

of the Vice President, without regard to any limiting definitions that Defendants may believe are

appropriate.

Date:   September 20, 2008

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge